**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| LAWRENCE LEITGEB, DAN | : | |
| ROBERTS, NELSON WALLER, | : | |
| ROBERT CLARKSON, | : | |
| individually, AND ROBERT | : | |
| CLARKSON, as representative of | : | |
| the class of flag supporters, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:06-CV-0034-RWS |
| BRENDA KELLEY, GARY | : | |
| STEPPE, JERRY STEELE, CURTIS | : | |
| WATERS, DR. ELIZABETH | : | |
| PINKERTON, JAMES THOMAS, | : | |
| DEBBIE HORTON, ELAINE | : | |
| DEFOOR, GEORGE PAYNE, | : | |
| STEPHENS COUNTY SCHOOL | : | |
| SYSTEM, MICHAEL | : | |
| CRAWFORD, RICHARD | : | |
| BRIDGEMAN, TOM LAW, and | : | |
| THE TOCCOA RECORD, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

Now before the Court are (1) Defendants Law and the Toccoa Record's

Motion to Dismiss [3]; (2) Defendants Crawford and Bridgeman's Motion to

AO 72A
(Rev.8/82)

Dismiss [6]; (3) Defendants Thomas, Payne, Kelley, Steppe, Steele, Waters, Pinkerton, Horton, Defoor, and Stephens County School System's Motion to Dismiss [21]; (4) Plaintiffs' Motion to Compel [35]; (5) Plaintiffs' Motion for Extension of Time to Answer the Interrogatories of Defendants [43]; (6) Defendants Crawford and Bridgeman's Motion for Protective Order and Motion to Stay Discovery [46]; (7) Plaintiffs' Motion to Compel Answers of Interrogatories and Production of Documents and Evidence [51]; and (8) Plaintiffs' Motion for Reconsideration [60].  After considering the entire record, the Court enters the following Order.

## Background

This case comes before the Court on Defendants' various motions to dismiss.  Therefore, the facts as stated herein are taken from Plaintiffs' Complaint, and assumed to be true.  Plaintiffs Lawrence Leitgeb, Robert Clarkson, Dan Roberts, and Nelson Waller are members and organizers of groups which actively support and advocate for the display of the Confederate flag in general, and incorporation of the Confederate flag into the Georgia state

AO 72A
(Rev.8/82)

flag in particular.[1]  (See Compl. ¶¶ 9-12.)  In March of 2004,[2] Plaintiffs

organized and participated in a "flag rally" at Stephens County Middle School,

where Defendant Kelley was employed as Principal.  (Id. ¶ .)  While not

entirely clear from the Complaint, it appears that, at some point during the rally,

---

[1] Plaintiff Leitgeb, "although formerly a Northerner, . . . has adopted the values normally associated with Southerners and Dixie[,] . . . was very active in the organization, publicity, and computer work for many flag rallies in Stephens County and the vicinity[, and] is widely known as a supporter of Southern Heritage, States [sic] Rights and symbols of such."  (Compl. ¶ 9.)  Plaintiff Clarkson is "is the chief organizer of the Southern Rights Association, . . . was the main speaker at the March 2004 rally[, has] organized many flag rallies all across the South east [sic][, and] is widely known as a Confederate flag supporter nationwide and in Stephens County."  (Id. ¶ 10.)  Plaintiff Roberts "has organized many flag rallies and is directly responsible for the flag rally that took place in March of 2004 outside of [Stephens County Middle School, has] co-sponsored and assisted flag rallies organized by the Southern Rights Association[, and] is widely known in that area as a flag supporter."  (Id. ¶ 11.)  Plaintiff Waller "has assisted Clarkson and others at organizing public rallies and demonstrations in support of Southern heritage and its symbols[,] is a well-known activist in the field of Southern history and heritage[,] leads the singing and music at many flag Confederate [sic] rallies, . . . has chronicled the modern Southern cause . . . in numerous national and local newspapers (including the one in Toccoa), and lectured widely on the subject."  (Id. ¶ 12.)

[2] The precise date of the rally is unclear.  While Plaintiffs generally refer to the rally as occurring in "March of 2004" (see, e.g., Compl. ¶¶ 10-11), they also state that the rally occurred on March 23, 2004.  (Id. ¶ 27.)  The Court doubts that to be the case, however, as it is undisputed that the newspaper article appeared in a bi-weekly newspaper on March 23, 2004 and that it contained a photograph of the rally.  Moreover, Defendants have consistently asserted that the rally occurred on March 19, 2004 (see Defs.' Br. in Supp. of Mot. to Dismiss [18-2] at 9; Defs.' Prelim. Rept. and Disc. Plan [13] ¶ 1(b)), and Plaintiffs have never challenged that assertion.  For purposes of this Order, the Court does not resolve this discrepancy, but rather simply notes that the rally, whenever it took place, must have occurred prior to the printing of the article.

Mr. Leitgeb was arrested on charges for which he would later stand trial.  (See id. ¶¶ 20, 34, 36; Pls.' Resp. in Opp'n to Mot. to Dismiss [23] ¶ 19.)  Sometime after the rally, on March 23, 2004, the Toccoa Record, a local, bi-weekly newspaper, ran an article headlined "Principal Receives Death Threat." (Compl. ¶ 19.)  The article pictured Ms. Kelley with a caption which read: "Stephens County Middle School principal Brenda Kelley has received a threatening email concerning the Confederate flag issue at her school." (Id.) Additionally, the article quotes Ms. Kelley as saying that she received an anonymous email stating: "Here I come.  The time is now.  Put the flag back and I will not kill you in your office."  (Id.)  Underneath the article was a picture of the March 2004 flag rally at Stephens County Middle School with Mr. Clarkson in the center and Mr. Roberts in the background.  (Id.)

On December 16, 2004, Ms. Kelley was called to testify in Mr. Leitgeb's criminal trial.  (Id. ¶ 20.)  While appearing as a witness, she testified under oath as follows:

> That was the line that I had put up with the flyers that
> came to our school, the hate mail that came to me
> personally threatening my life, where I could not even
> go up town on school business that I didn't come back
> to my computer with all this stuff on my computer

4

about killing me and my family.

(Id.)

Based on these events, Plaintiffs initiated this action in March of 2006 against Ms. Kelley, Gary Steppe, Superintendent of Stephens County Schools, Stephens County School Board members Jerry Steele, Curtis Waters, Elizabeth Pinkerton, James Thomas, Debbie Horton, Elaine DeFoor, and George Payne, (collectively, the "School Board Defendants"); the Stephens County School System; Stephens County District Attorney Michael Crawford, and Assistant District Attorney Richard Bridgeman; as well as the Toccoa Record, and its publisher, Tom Law.  In their five-count, pro se Complaint, Plaintiffs assert claims under (1) 42 U.S.C. § 1983 for violation of their rights under the First, Fifth, and Fourteenth Amendments; (2) 42 U.S.C. § 1985 based upon an alleged conspiracy to violate their civil rights; and (3) state law for intentional infliction of emotional distress, slander, defamation, perjury, and false imprisonment.[3]

---

[3] Plaintiffs also indicate that they are asserting claims under Title VII and 42 U.S.C. § 1981, although such claims are not reflected in the enumerated counts.  (See Compl. at 2.)  To the extent their Complaint may be read to assert such claims, however, those claims have been expressly abandoned.  (See Pls.' Br. in Supp. of Opp'n to Mot. to Dismiss [28] at 1 ("Plaintiffs will not be making any further claims in regards to Title VII and 42 U.S.C. § 1981.").)  Similarly, while not listed in the enumerated counts, it is possible that, broadly construed, Plaintiffs' Complaint could be read to allege that the

Defendants have moved to dismiss all claims for various reasons, and the Court will address those motions first.  In considering these motions, the Court will first address Plaintiffs' federal law claims, turning only to Plaintiffs' state law claims if the Court determines that exercise of jurisdiction over those claims would be appropriate.  Finally, if the Court concludes that valid claims remain in this action, the Court will address the various discovery motions currently pending before it.

## Discussion

**I.      Defendants' Motions to Dismiss**

### A.      Applicable Legal Standard

As stated above, these issues come before the Court on Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12.  Consequently, the Court accepts as true the allegations set forth in the Complaint, and construes them in the light most favorable to Plaintiffs as the non-movants. Cooper v. Pate, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964);

---

School System Defendants are liable based upon their negligent hiring, training, and supervision of Ms. Kelley.  (See Compl. ¶ 16.)  In view of this Court's decision to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, however, the Court need not address these claims.

6

Conner v. Tate, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). Motions to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Nevertheless, when, under applicable law, the Court concludes that a particular claim is not viable, it "must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

### B.    Federal Claims

Plaintiffs allege that Defendants have violated their federally protected constitutional rights. Specifically, Plaintiffs allege that (1) Ms. Kelley, through the publication of her statement in the Toccoa Record and her trial testimony, violated their rights under the First, Fifth, and Fourteenth Amendments; (2) the School System Defendants are liable for these constitutional violations under the doctrine of respondeat superior; and (3) that Ms. Kelley and the District Attorney conspired to violate their civil rights by presenting Ms. Kelley's allegedly perjurious testimony at Mr. Leitgeb's criminal trial and/or refusing to

prosecute Ms. Kelley for that alleged perjury.  For the reasons that follow, each

of these claims fails as a matter of law.

1.      Claims against Defendants Crawford and Bridgeman

While it is far from clear from Plaintiffs' Complaint and other filings, it

appears that Plaintiffs assert claims against Defendants Crawford and

Bridgeman under 42 U.S.C. § 1983 and/or § 1985 based upon their failure to

prosecute Ms. Kelley on charges of perjury arising out of her testimony as a

witness in Mr. Leitgeb's criminal trial.  These claims fail as a matter of law,

however, because a prosecutor is entitled to absolute immunity when acting

within the scope of his prosecutorial duties.  Imbler v. Pachtman, 424 U.S. 409,

427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976).  Prosecutorial duties include the

initiation and pursuit of criminal prosecutions.  Id. at 431; Rivera v. Leal, 359

F.3d 1350, 1353 (11th Cir. 2004) (explaining that prosecutors are entitled to

absolute immunity for all actions taken while performing prosecutorial

function, which includes initiation and pursuit of criminal prosecutions, and

most court appearances including examination of witnesses and presentation of

evidence); Elder v. Athens-Clarke County, 54 F.3d 694, 695 (11th Cir. 1995)

("A prosecutor's decision to bring charges against a person, so long as the

8

prosecutor is acting within the scope and territorial jurisdiction of his office, is immune from an action for damages under § 1983.").  Thus, a prosecutor's decision to bring charges and prosecute an offense falls squarely within his prosecutorial duties.  As such, Defendants Crawford and Bridgeman are absolutely immune from suit for any federal claims arising out of their failure to bring charges of perjury against Ms. Kelley.[4]  Accordingly, Plaintiffs' claims against Defendants Crawford and Bridgeman under 42 U.S.C. §§ 1983 and 1985 are **DISMISSED**.

  2.     Claims against Ms. Kelley and the School Board Defendants

    a.     Section 1983 claims

      i.     Individual capacity claims

Turning first to their claims against Ms. Kelley, Plaintiffs' allege that her statement to the Toccoa Record that she had received an anonymous, threatening email, as well as her allegedly perjurious testimony at Mr. Leitgeb's

---

[4] Mr. Leitgeb has recognized as much in his filings with this Court.  (See Br. in Supp. of Opp'n to Mot. for Prot. Order and Stay of Disc. [60-2].)  Nevertheless, Plaintiff requests that this Court overrule Imbler based on his view that the "current law is illegitimate."  (Id. at 1.)  Of course, even if this Court were of the opinion that Imbler should be overruled, which it is not, it would lack the authority to do so and would be bound to follow that decision.  As such, these claims are due to be dismissed.

AO 72A
(Rev.8/82)

criminal trial, violated their rights under the First, Fifth and Fourteenth Amendments.  These claims fail as a matter of law.

First, Plaintiffs cannot prevail on claims under § 1983 based upon Ms. Kelley's allegedly perjurious testimony at Mr. Leitgeb's criminal trial.  It is well-established that an individual who testifies as a witnesses in judicial proceeding is absolutely immune from suit under § 1983.  See Briscoe v. LaHue, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  This immunity applies whether the testifying individual is a public official or a private citizen.  Briscoe, 460 U.S. at 326 (holding that § 1983 does not authorize convicted person to assert claim for damages against police officer for giving perjured testimony at criminal trial).  Therefore, insofar as Plaintiffs' § 1983 claims are predicated on Ms. Kelley's trial testimony, their claims fail as a matter of law.

Second, Plaintiffs can not prevail on their § 1983 claims based upon Ms. Kelley's statement to the Toccoa Record.  As an initial matter, the Court confines its analysis to the actual substance of Ms. Kelley's statement, and does not consider the article's headline, the placement of photographs, or their captions, as those matters are clearly under the control of Mr. Law and the

AO 72A
(Rev.8/82)

Toccoa Record, and not Ms. Kelley.  Moreover, while Plaintiffs' Complaint

purports to assert violations of their First, Fifth, and Fourteenth Amendment

rights based on this statement, it is clear from Plaintiffs' allegations that theirs

is a First Amendment claim.  (See Compl. ¶ 36 ("By intimidating and

humiliating the Plaintiffs and their beliefs, Defendant Brenda Kelley sought to

render the Plaintiffs [sic] exercise of free speech meaningless by turning public

opinion against the Plaintiffs and their positions."); id. (stating that Ms. Kelley

"intended to wreck the political demonstration of the Plaintiffs" and "was able

to ruin the First Amendment demonstration . . . and to deny freedom of speech

to all of the participants").)  Thus, the sole question for the Court is whether

Ms. Kelley's statement that she received an anonymous email stating:

> Here I come.  The time is now.  Put the flag back and
> I will not kill you in your office.

violated Plaintiffs' rights under the First Amendment.  The Court concludes that

it did not.

Plaintiffs allege that "by falsely accusing the Plaintiffs of death threats,"

Ms. Kelley was able to "ruin" their March 2004 rally and "deny freedom of

speech to all the participants."  (Compl. ¶ 36.)  This allegation notwithstanding,

11

Ms. Kelley's statement simply could not have interfered with Plaintiffs' March 2004 flag rally at Stephens County Middle School because, as explained above, that statement was not published until after the rally was concluded. See supra. note 2. As such, Ms. Kelley did not violate Plaintiffs' rights under the First Amendment.

Having concluded that Plaintiffs' claims against Ms. Kelley fail as a matter of law, the Court turns now to consider whether Plaintiffs may recover against the School Board Defendants under § 1983. The Court concludes that they cannot. First, Plaintiffs' claims are expressly predicated on a theory of respondeat superior. (See Compl. ¶ 36.) But, it is well-established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). Thus, to the extent that Plaintiffs seek to recover on that theory, their claims fail as a matter of law.

Second, even assuming that Plaintiffs' Complaint could be read to more generally allege supervisory liability under § 1983, that claim similarly must be dismissed. Insofar as Plaintiffs' claims against the School Board Defendants are based upon Ms. Kelley's statement in the Toccoa Record, these claims fail

as a matter of law because they are predicated upon a theory of supervisory liability and, as discussed above, Ms. Kelley's statement did not violate Plaintiffs' rights under the First Amendment.  Since Ms. Kelley's underlying statement was not unconstitutional, there can be no supervisory liability for that statement.  Moreover, even assuming that Ms. Kelley's statement did rise to the level of a constitutional violation, there is no basis for holding the School System Defendants liable under § 1983.  It is well-established in this Circuit that supervisory liability under § 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  Because Plaintiffs fail to allege either that the School System Defendants somehow participated in Ms. Kelley's statement to the Toccoa Record, or that there was a causal connection between School System Defendants' actions and Ms. Kelley's statement to the newspaper, they cannot recover against the School System Defendants under § 1983 based upon that statement.

13

With respect to Ms. Kelley's allegedly perjurious trial testimony, it is equally clear that they cannot recover under a supervisory liability theory. Again, even assuming that Ms. Kelley's trial testimony could form the basis of a constitutional violation, Plaintiffs' Complaint fails to allege that the School System Defendants caused Ms. Kelley to testify in the manner in which she did. As such, supervisory liability under § 1983 is inappropriate.  Accordingly, Plaintiffs' claims under § 1983 against the School System Defendants fail as a matter of law.

<div style="margin-left: 2em;">

ii.    <u>Claims against the School Board Defendants in their official capacity and the Stephens County School System</u>

</div>

The Court similarly concludes that Plaintiffs' claims against the School System Defendants fail as a matter of law.  Insofar as Plaintiffs seek to assert a claim against the School Board Defendants in their official capacity, this claim is redundant of Plaintiffs' claims against the Stephens County School System. Indeed, the Eleventh Circuit has held that "[t]here no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."  <u>Busby v. City of Orlando</u>, 931 F.2d

764, 776 (11th Cir.1991); <u>see also</u> <u>Kentucky v. Graham,</u> 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under <u>Monell,</u> local government units can be sued directly for damages and injunctive or declaratory relief." (citation omitted)).  Thus, the Court turns now to the question of whether the Stephens County School System can be held liable for Ms. Kelley's statement to the Toccoa Record and trial testimony.

It is well-established that a municipality or other governmental entity may not be held liable under § 1983 on a theory of respondeat superior.  <u>Davis v. DeKalb County Sch. Dist.,</u> 233 F.3d 1367, 1375 (11th Cir. 2000).  The Supreme Court requires "a plaintiff seeking to impose liability on a municipality under § 1983  to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  <u>Board of County Comm'rs of Bryan County, Okl. v. Brown,</u> 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  <u>Sewell v. Town of Lake Hamilton,</u> 117 F.3d 488, 489 (11th Cir. 1997).  A custom is a practice that is so settled and permanent that it takes on

the force of law.  Monell, 436 U.S. at 690-91.  The policy or custom must be "the moving force behind the constitutional violation."  Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (internal quotations omitted).  "This ' "official policy" requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  Grech, 335 F.3d at 1329 n.5 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)) (third emphasis added by Eleventh Circuit).

In this case, Plaintiffs' Complaint fails to allege that any policy or custom of the Stephens County School System was the moving force behind the alleged violations of their constitutional rights.  Moreover, insofar as Plaintiffs rely on the School Board Defendants' failure to discipline Ms. Kelley for her statement to the newspaper, that single failure, to the extent there was a failure at all, is insufficient to establish the existence of an official policy or custom.  Grech, 335 F.3d at 1326 n.6 ("A single incident would not be so pervasive as to be a custom or practice.").  As such, Plaintiffs' § 1983 claims against the Stephens County School System fail as a matter of law.

16

b.      Section 1985 claims

In Count V of their Complaint, Plaintiffs appear to allege that Ms. Kelley and the District Attorney engaged in a conspiracy to violate their civil rights. (See Compl. ¶¶ 39-41.)  Although Plaintiffs do not specify in Count V which clause of § 1985 was violated, Paragraph 8 of their Complaint invokes § 1985(2).  (See Compl. ¶ 8 (alleging "Violation of 42 U.S.C. § 1985 Conspiracy to interfere with civil rights: Obstructing justice; intimidating party, witness, or juror.") For the reasons that follow, this claim fails as a matter of law.

Section 1985(2) contains two parts.  The first part of § 1985(2) creates a private cause of action against any two or more persons who (1) conspire; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a federal court; (3) which results in injury to the plaintiff.  Morast v. Lance, 807 F.2d 926, 929-30 (11th Cir. 1987).  The second part of § 1985(2) creates a private cause of action for any two or more persons who

> conspire for the purpose of impeding, hindering,
> obstructing, or defeating, in any manner, the due
> course of justice in any State or Territory, with intent
> to deny to any citizen the equal protection of the laws,
> or to injure him or his property for lawfully enforcing,
> or attempting to enforce, the right of any person, or

17

class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2).

In this case, Plaintiffs' Complaint is unclear as to which part of § 1985(2) they allege was violated. First, Plaintiffs state that Ms. Kelley—and notably, Ms. Kelley alone—"intended to deny the Plaintiffs their rightful day in court by seeking to humiliate the Plaintiffs, using local law enforcement to carry out her own personal vendetta, and turning public opinion against the Plaintiffs." (Compl. ¶ 40.) Plaintiffs' allegation that Ms. Kelley sought to "deny [them] their rightful day in court" would indicate that Plaintiffs' claim rests in the first part of § 1985(2), which prohibits conspiracies to interfere with attending or testifying in federal court.[5] Second, Plaintiffs state that the District Attorney "sat idly by while Defendant Brenda Kelly lied on the witness stand and did nothing to prevent an injustice," apparently contending that the presentation of this evidence had the effect of denying Plaintiffs the equal protection of the law. Thus, this allegation would appear to implicate the second part of § 1985(2).

---

[5] The Court assumes, for purposes of this Order, that the "day in court" which Plaintiffs allege they were denied was a federal one.

18

Whichever part of § 1985(2) Plaintiffs' Complaint is grounded upon is of no moment, however, because a claim under either part fails as a matter of law.

The core of a conspiracy claim is an agreement between the parties. Bailey v. Bd. of County Comm'rs of Alachua County, 956 F.2d 1112, 1122 (11th Cir. 1992). Thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal. Id. Moreover, "[i]n civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" Kearson v. Southern Bell Tel. & Tel. Co. 763 F.2d 405, 407 (11th Cir. 1985). Finally, "to state a claim of conspiracy under section 1985 one must allege that the conspirators were motivated by racial, or otherwise class-based, invidiously discriminatory intent." Id. (internal quotations omitted).

In this case, Plaintiffs' Complaint fails to allege any agreement between Defendants to deprive them of their rights, much less to specifically allege that such an agreement existed. Additionally, Plaintiffs do not allege that Defendants were motivated by class-based, discriminatory intent. To the contrary, Plaintiffs allege that Ms. Kelley employed local law enforcement "to carry out her own personal vendetta." In the absence of either an allegation that

19

Defendants agreed to violate their rights, or that the agreement was motivated by class-based animus, a claim for conspiracy, whether to prevent participation in federal court proceedings or to deprive a person of equal protection under the law, fails as a matter of law.  Accordingly, Plaintiffs' conspiracy claims in Count V of their Complaint are due to be dismissed.  See Mickens v. Tenth Judicial Circuit, 181 Fed. Appx. 865, 876 (11th Cir. 2006) (affirming dismissal of § 1985(3) conspiracy claim because plaintiffs "failed to allege with specificity an agreement between the defendants to deprive the [plaintiffs] of their rights").

### C.    State Law Claims

Although Plaintiffs state in their Complaint that this Court has both federal question and diversity jurisdiction over this case, diversity jurisdiction is clearly lacking.  Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  As the Supreme Court has explained, the statute requires complete diversity between all plaintiffs and all defendants. Strawbridge v. Curtiss, 3 Cranch 267, 2 L. Ed. 435 (1806); accord Owen Equipment & Erection Co. v. Kroger, 437

U.S. 365, 375, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978).  "Complete diversity

requires that no defendant in a diversity action be a citizen of the same state as

any plaintiff."  MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1239 (11th

Cir. 2005).  Therefore, "[i]n a case with multiple plaintiffs and multiple

defendants, the presence in the action of a single plaintiff from the same State

as a single defendant deprives the district court of original diversity jurisdiction

over the entire action."  Exxon Mobil Corp. v. Allapattah Services, Inc., 545

U.S. 546, 553, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).

    In this case, it is clear from Plaintiffs' Complaint that there is not

complete diversity between all plaintiffs and all defendants.  Each of the

Defendants is a resident of the state of Georgia, as are Plaintiffs Leitgeb and

Roberts.  (See Compl. ¶¶ 9, 11, 14-16.)  Therefore, the only basis for the

exercise of this Court's original jurisdiction would be pursuant to 28 U.S.C. §

1331 based upon Plaintiffs' claims under 42 U.S.C. § 1983 and § 1985.  The

Court, however, has dismissed these federal claims from this action, and as

such, turns to examine whether it should exercise supplemental jurisdiction over

Plaintiffs' remaining state law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." That said, a district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In determining whether to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should consider the interests of judicial economy, convenience, fairness to the litigants, and comity. See Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994) (holding that these factors, as provided by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), survive the enactment of § 1367). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon Univ.

22

v. Cohill, 484 U.S. 343, 350 & n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Arnold v. Tuskegee Univ., No. 06-11156, 2006 WL 3724152, at *6 (11th Cir. Dec. 19, 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."); Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (same).

In the instant case, the Court has dismissed Plaintiffs' only federal-law claims in the early stages of this litigation.  The resolution of Plaintiffs' remaining claims depends exclusively on determinations of state law.  As the Eleventh Circuit has admonished, "[s]tate courts, not federal courts, should be the final arbiters of state law."  Id.  Considerations of comity therefore singularly favor dismissal of Plaintiffs' state law claims.  Furthermore, the Court finds that judicial economy, fairness, and convenience favor resolution by a state court of the remaining claims in this case.  "This is especially true here where the Court is dismissing Plaintiff's federal law claim prior to trial."  Id.  Accordingly, Plaintiffs' remaining state law claims are **DISMISSED without prejudice**.

23

## II.      Remaining Motions

In light of the Court's dismissal of all claims in this action, Plaintiffs'
Motion to Compel [35]; Plaintiffs' Motion for Extension of Time to Answer the
Interrogatories of Defendants [43]; Defendants Crawford and Bridgeman's
Motion for Protective Order and Motion to Stay Discovery [46]; Plaintiff's
Motion to Compel Answers of Interrogatories and Production of Documents
and Evidence [51]; and Plaintiffs' Motion for Reconsideration [60] are
**DENIED as moot**.

## Conclusion

Plaintiffs' claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are
**DISMISSED**.  Plaintiffs' remaining state law claims are **DISMISSED without
prejudice** pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiffs' Motion to Compel
[35]; Plaintiffs' Motion for Extension of Time to Answer the Interrogatories of
Defendants [43]; Defendants Crawford and Bridgeman's Motion for Protective
Order and Motion to Stay Discovery [46]; Plaintiff's Motion to Compel
Answers of Interrogatories and Production of Documents and Evidence [51];
and Plaintiffs' Motion for Reconsideration [60] are **DENIED as moot**.

24

**SO ORDERED** this  6th  day of March, 2007.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

25

AO 72A
(Rev.8/82)